# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-2053V

| | |
|---|---|
| ELIZABETH BEDSON,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 4, 2025 |

*David J. Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Alec Saxe*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On October 21, 2021, Elizabeth Bedson filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving a Pneumococcal 13-Valent Conjugate ("PCV-13" or "Prevnar") vaccination on July 17, 2020. Petition at 1 (ECF No. 1). The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

---

[1] Although I have not formally designated this Decision for publication, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, because it contains a reasoned explanation for my determination. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons set forth below, and after holding a "Motions Day" hearing on entitlement and damages, I find that Petitioner is entitled to compensation, and I award damages in the amount of **$55,000.00**, **representing actual pain and suffering.**

## I.   Relevant Procedural History

This case was activated from "pre-assignment review" on March 9, 2022. (ECF No. 11). The parties attempted settlement, but their efforts were unsuccessful. I ordered the parties to submit briefing regarding entitlement and damages on July 5, 2023, along with any additional outstanding evidence. Petitioner filed her Motion for Ruling on the Record and Brief in Support of Damages on August 24, 2023. (ECF No. 25). Respondent filed his combined Rule 4(c) Report and Response Brief on November 2, 2023. (ECF No. 26). Petitioner filed a reply November 15, 2023. (ECF No. 28).

On July 17, 2025, I proposed this case for an expedited hearing on August 22, 2025, at which time I would decide the disputed issues based on all evidence filed to date and any oral argument from counsel. (ECF No. 30). The parties agreed, and the "Motions Day" hearing took place as scheduled. During the hearing, I orally ruled on Petitioner's entitlement to compensation, and then made an oral damages determination. This Decision memorializes those findings and determinations.

## II.   Factual Findings and Ruling on Entitlement

### A.  Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed.

2

Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

3

>    (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
>    (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only Table criterion for SIRVA that Respondent seriously contests is the second - whether the onset of Petitioner's pain occurred within 48 hours of vaccination. Response at 8; *see* 42 C.F.R. § 100.3(c)(10)(ii); *see also* 42 C.F.R. § 100.3(a)(XIV)(B) (requiring the first symptom or manifestation of onset within 48 hours of vaccination for a SIRVA injury following receipt of a flu vaccine). He emphasizes that Petitioner did not report or seek treatment for her alleged left arm pain until September 3, 2020, 48 days after vaccination, despite having four interim medical appointments with her ear, nose, and throat ("ENT") doctor. Response at 14-15. Respondent also argues that a 48-day delay in treatment undermines her contentions that the pain began the evening of her vaccination and progressively got worse from there, and that the Court should afford little weight to Petitioner's contentions that she delayed seeking treatment due to the COVID-19 pandemic because she presented for several in-person medical appointments. *Id.* at 16. Finally, Respondent argues that the contemporaneous medical records consistently make generalized references to left arm pain beginning after vaccination without specifying a more precise onset. *Id.*

Notwithstanding Respondent's objection, I find that the delay in question is not facially unreasonable, especially in comparison to what has characterized the course of seeking treatment for many other successful claims. It is frequently observed that claimants expect any post-vaccination pain to be transient, or not serious enough to merit evaluation by a medical professional. In this case, Petitioner's scheduled ENT appointments post-vaccination were for other health concerns unrelated to her shoulder. It is not unreasonable that Petitioner may have limited her discussions with her doctor that day to her other health concerns because that was not the primary focus of the visit.

Additionally, I note that one of Petitioner's contemporaneous treatment records *does* place onset within 48-hours of vaccination. On March 4, 2021, Petitioner was seen for a PT initial evaluation for her left shoulder. Ex. 4 at 69. This record notes the date of onset as July 17, 2020, and the mechanism of the shoulder injury thusly: "Prevnar

injection – started having the usual aching pain that evening; progressively worsened and got weaker w/continued pain." *Id.* Given that Petitioner had no prior history of left shoulder pain, it can be inferred that by "the usual aching pain" Petitioner was referring to the typical shoulder pain one would expect following vaccination. Petitioner places that pain as starting the evening of her vaccination and indicated that it only got worse from there. Although Petitioner's other medical records do not place onset with this level of specificity, they certainly do not cut against Petitioner's contention that her shoulder pain began within 48-hours of vaccination. I therefore find that Petitioner has established the onset of her left shoulder pain by preponderant evidence.

Otherwise, the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i) & (iii)-(iv). A thorough review of the record in this case does not reveal either a prior or current condition, pain and limited range of motion ("ROM") other than in Petitioner's injured left shoulder, and no other condition or abnormality which would explain Petitioner's symptoms. Thus, and as I stated during the expedited hearing, all elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D).

Respondent has argued that Petitioner failed to show that her alleged vaccine injury lasted for more than six months. Response at 10-14. Respondent notes that following her first mention of left shoulder pain related to her Prevnar vaccination on September 3, 2020, during a physical at her PCP's office, she did not seek treatment for her shoulder for over five months thereafter, until February 16, 2021, when she returned to her PCP's office complaining of left arm pain. *Id.* at 11. Respondent argues that this gap in treatment supports a finding that Petitioner's symptoms resolved prior to the six-month post-onset date. *Id.* Respondent further notes Petitioner's complaint of "only mild discomfort" in her left arm and the lack of diagnosis and/or treatment recommendation related to her complaint as further evidence that her alleged shoulder injury resolved less than two months post-vaccination.

Based upon the record, I find that Petitioner has preponderantly supported that she suffered the effects of her shoulder injury for longer than six months. Petitioner consistently recounted that she had been experiencing shoulder pain since receiving the Prevnar vaccination in July 2020, and the mere fact that she delayed seeking additional

5

treatment for five months after her initial presentation for shoulder pain (only 48 days post vaccination) does not serve to defeat the severity requirement. Indeed, Petitioner describes a condition which started out with mild aching the night of the vaccination which gradually progressed as time went on, with symptoms occasionally waxing and waning depending on her use of ibuprofen to manage her symptoms. Ex. 2 at 3. As I noted at the Motions Day hearing, such delays and/or gaps in treatment speak more to the quantum of pain and suffering damages than they do to the severity requirement.

Regarding the other requirements, there is ample proof that Petitioner received a covered vaccine in her left arm on July 17, 2020, and there is no indication that she has received any other award or settlement as a result of this injury. Therefore, Petitioner has satisfied all of the requirements for compensation.

### III. Compensation to be Awarded

#### A. Parties Arguments

Petitioner requests $70,000.00 for actual pain and suffering, maintaining that her treatment involved multiple doctor's appointments, one MRI, 29 sessions of physical therapy, one cortisone injection, and that she still experiences the sequela of her SIRVA injury to this day. Mot. at 35. She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *George, Sakovits, Belka, Celuch, and Miller,* who received $67,000.00, $68,000.00, $68,000.00, $70.000.00, and $75,000.00 respectively for their past pain and suffering.[4] *Id.*

In contrast, Respondent asserts that Petitioner should receive the lesser amount of $35,000.00. Response at 19. Respondent argues that the facts and circumstance more closely resemble, but are less severe, than the circumstances of the petitioners in *Ramos, Piccolotti,* and *Gootee*, in which petitioners were awarded $40,000.00, $45,000.00, and $43,000.00 respectively.[5] *Id.* at 29-32. He also maintains that Petitioner's case is

---

[4] *George v. Sec'y of Health & Hum. Servs.,* No. 18-426V, 2020 WL 4692451 (Fed. Cl. Spec. Mstr. Jul. 10, 2020); *Sakovits v. Sec'y of Health & Hum. Servs.,* No. 17-1028V, 2020 WL 3729420 (Fed. Cl. Spec. Mstr. June 4, 2020); *Belka v. Sec'y of Health & Hum. Servs.,* No. 20-585V, 2022 WL 4717891 (Fed. Cl. Spec. Mstr. Sep. 1, 2022); *Celuch v. Sec'y of Health & Hum. Servs.*, No. 18-544V, 2021 WL 2368137 (Fed. Cl. Spec. Mstr. May 10, 2021); *Miller v. Sec'y of Health & Hum. Servs.*, No. 20-604V, 2022 WL 3641716 (Fed. Cl. Spec. Mstr. Jul. 22, 2022).

[5] *Ramos v. Sec'y of Health & Hum Servs.*, No. 18-1005V, 2021 WL 688576 (Fed. Cl. Spec. Mstr. Jan. 4, 2021); *Piccolotti v. Sec'y of Health & Hum. Servs.*, No. 20-135V, 2023 WL 3165383 (Fed. Cl. Spec. Mstr. Nov. 14, 2023); *Gootee v. Sec'y of Health & Hum. Servs.*, No. 22-827V, 2024 WL 5295109 (Fed. Cl. Spec. Mstr. Dec. 2, 2024).

distinguishable from the cases Petitioner cites, because of the injury's milder nature. *Id.* at 25-29.

### B. Legal Standards for Pain and Suffering Awards

In another decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections II and III of *Friberg v. Sec'y of Health & Hum. Servs.*, No. 19-1727V, 2022 WL 3152827 (Fed. Cl. Spec. Mstr. July 6, 2022).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[6]

### C. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including, but not limited to: Petitioner's medical records, signed affidavits, filings, and all assertions made by the parties in written documents and at the expedited hearing held on August 22, 2025. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Pursuant to my oral ruling on August 22, 2025 (which is fully adopted herein), **I find that $55,000.00 represents a fair and appropriate amount of compensation for Petitioner's pain and suffering.**

---

[6] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

In making this determination, I have considered relevant facts such as the mildness of Petitioner's left shoulder pain and limited ROM, the conservative nature of her treatment, and the number and length of gaps in her treatment. Although Petitioner reported peak pain of 7/10 at her February 16, 2021, medical appointment, she reported 0/10 pain approximately three weeks later at her March 4, 2021, PT intake evaluation, and she noted that the Voltaren she had been prescribed helped alleviate most of her pain. Ex. 1 at 11; Ex. 4 at 69-73. From then on, Petitioners symptoms waxed and waned with treatment but can be described as almost exclusively mild in nature. For example, on her seventh PT session on April 12, 2021, Petitioner rated her pain at 0/10 and was feeling good enough that she had reduced her Voltaren intake from two pills to one pill per day. Ex. 12 at 32.

Three months later, at an appointment with her PCP, Petitioner rated her pain at 4/10 but noted that it waxed and waned in severity, typically based on activity. Ex. 4 at 53-57. When Petitioner restarted PT on September 2, 2021, she noted that her pain was 1/10 at best and 6/10 at worst. Ex 11 at 391. Following 22 additional PT sessions, Petitioner was discharged with 0/10 pain at best and 3/10 pain at worst. *Id.* at 474. Aside from the 29 total PT sessions, Petitioner's treatment course also involved one cortisone injection and one MRI, which identified supraspinatus tendinosis in her left shoulder but no full-thickness or high-grade partial thickness tear, further underscoring the mild nature of her injury. Ex. 14 at 14. Additionally, Petitioner's course of treatment (excluding her initial visit on September 3, 2020, after which she received no formal diagnosis for her shoulder pain and did not pursue any formal treatment) lasted approximately nine months, including an approximately three-month gap from April to July 2021.

The overall severity of the SIRVA in the instant case was not high enough to warrant $70,000.00 in damages. The cases cited to by Petitioner are distinguishable due to the greater severity of injury in those circumstances. In *Miller,* for example, a petitioner reported pain after 71 days required 25 PT sessions, three steroid and trigger point injections, and was recovered in 17 months. *Miller*, 2022 WL 3641716, at *5-6. The *Sakovits* petitioner had an approximately 3.5 month delay in seeking treatment, attended 23 sessions of PT, one cortisone injection, and sought treatment for 6.5 months. *Sakovits*, 2020 WL 3729420, at *3-4. However, *Sakovits* is distinguishable from the instant case due to the overall severity of the injury – that claimant experienced a moderate SIRVA to the point where her treating physician considered the possibility of surgical intervention and/or additional cortisone injections, and her experience was compounded by having to care for a sick child. *Id.* at 4. Finally, the *Celuch* petitioner first sought treatment 63-days post vaccination, attended 24 sessions of PT, had one cortisone injection, and had recovered by approximately eight months. *Celuch*, 2021 WL 2368137, at *4. However, the *Celuch* petitioner evinced a more severe injury supported by a more immediate

presentation and treatment for symptoms and higher reported levels of pain and reduction of ROM. *Id.*

Conversely, Respondent's cited cases of *Ramos* and *Piccolotti* are distinguishable as less severe injuries than the instant case. For example, as here the *Ramos* petitioner also experienced brief periods of peak pain followed by the waxing and waning of mild pain, including stretched with no pain whatsoever. *Ramos*, 2021 WL 688576, at *5. However, that claimant only underwent 11 PT sessions and did not undergo an MRI or any sort of injection to alleviate his symptoms. *Id. Piccolotti* is also distinguishable due to the extremely long treatment gap – approximately two years following a cortisone injection – and the fact that the petitioner did not do any formal PT. 2023 WL 3165383, at *5-6.

Taking into account the record of Petitioner's SIRVA and the comparable cases cited by Petitioner and Respondent, as well as my experience in adjudicating similar cases, I find that $55,000.00 represents a reasonable amount of compensation for Petitioner's actual pain and suffering.

## Conclusion

For all the reasons discussed above and based on consideration of the entire record, I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $55,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[7]

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $55,000.00, representing compensation for her actual pain and suffering, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id.*

---

[7] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[8]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[8] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.